**John Michael MELE, III, Plaintiff,**

**v.**

**FIRST COLONY LIFE INS. CO., et al., Defendants.**

**Civ. A. No. 88–3297 (PJA).**

United States District Court, District of Columbia.

May 22, 1991.

Calvin Steinmetz, Nancy Schultz, Asst. Corp. Counsel, Washington, D.C., for intervenor plaintiff District of Columbia.

Frank Martell, Washington, D.C., for Healthmasters of Md., Inc.

Jack L. Diamond, M.D., Patrick McGlone, Washington, D.C., for First Colony Life Ins. Co.

Steven K. Davidson, Washington, D.C., for Frederick V. McNair, III.

Charles Martinez, Washington, D.C., for Colonial Brokerage House, Inc.

MEMORANDUM OPINION

PATRICK J. ATTRIDGE, United States Magistrate Judge.

This case is before the court with the consent of the parties for all purposes pursuant to 28 U.S.C. § 636(c). At issue is the defendants' motion to dismiss or in the alternative for substitution of parties. For the reasons stated below, the defendants' motion is denied in part and granted in part. Furthermore, the plaintiff shall have a reasonable time in which to effect substitution of a bankruptcy trustee for the named plaintiff in this action.

I. BACKGROUND

In November of 1988, the plaintiff John Mele, III filed a complaint alleging that the defendant insurance companies violated and conspired to violate the District of Columbia Prohibition of Discrimination in the Provision of Insurance Act of 1986, D.C. Code Ann. §§ 35–221 *et seq.* (1986) (the "Act") by having the plaintiff's blood tested for exposure to the HIV virus (the cause of the disease commonly known as "AIDS") at the time he applied for life insurance policies. The plaintiff has requested substantial sums as compensation for emotional suffering and as punitive damages.

After this case had been pending for some sixteen months, the plaintiff filed a voluntary Petition for Bankruptcy under Chapter 7 in the United States Bankruptcy Court for the District of Columbia on April 2, 1990 and a bankruptcy trustee was subsequently appointed to administer the estate. The trustee was notified of the existence of his lawsuit [1], and was told by the plaintiff that it was "a pretty good case." [2] In addition, the trustee also asked for and received a copy of the complaint filed in this action. The trustee made virtually no other inquiry into this matter however in evaluating the lawsuit's monetary worth. He made no attempt to seek the opinion of counsel as to the likelihood of the suit's success, nor did he look at any other filings made in the case as a means of making his own determination of the case's strength. He made no inquiries as to the settlement value of the case despite the fact that several "deep pocket" insurance companies were named as defendants, nor did he attempt to ascertain whether settlement negotiations had been or were being conducted. Had any preliminary inquiries been made by the trustee to either the debtor plaintiff or his discrimination suit counsel, the trustee would have discovered that the defendants had stated prior to the bankruptcy filing by way of letter and oral communication to counsel that they would be inclined to consider a settlement "in the low six figures." [3] Moreover, he also would have discovered that the plaintiff's discrimination suit counsel [4] had professionally valued the case for settlement purposes at a considerably higher figure, clos-

1. Although the plaintiff had incorrectly labeled his lawsuit as *"Mele v. Metro Insurance"* in the bankruptcy filings, the trustee testified that this did not prevent him from learning of the existence of the suit at hand. Because the trustee was not so prevented, the incorrect labeling is inconsequential and not a ground for a finding that the property was not otherwise abandoned. *Tavormina v. Harris,* 32 B.R. 125, 127 (Bankr.S. D.Fla.1983), *In re Sutton,* 10 B.R. 737, 740 (Bankr.E.D.Va.1981).

2. Transcript of April 8, 1991 Hearing at 78 (testimony of John Rosenberg, bankruptcy attorney for the plaintiff).

3. *Id.* at 85 (testimony of Calvin Steinmetz, plaintiff's counsel in this action); *see also id.* at 62–63 (testimony of defense counsel, Steven Davidson, also attesting to a settlement offer in the "low six-figures").

4. The plaintiff's discrimination suit counsel and bankruptcy counsel are not one and the same.

er to one million dollars,[5] and that therefore no further settlement discussions of a substantial nature were pursued.[6] No such inquiries were made however. Instead, based in part on the trustee's "overriding concern ... that [the lawsuit in question] was an AIDS case" given that "there was quite a bit of hysteria about AIDS matters"[7] and because the suit involved a new statute, the trustee felt the case had inconsequential value and would be burdensome to administer.[8] Subsequently, the trustee found that there were no assets in the debtor's estate with which to satisfy creditors and on December 13, 1990, the plaintiff was discharged and the bankruptcy filing was closed as a "no asset" case.

As a result, the plaintiff claims that the right to prosecute his lawsuit against the defendants and any proceeds accruing therefrom have been "abandoned" to him by the trustee under 11 U.S.C. § 554(c). The defendants however assert that the pending lawsuit was not abandoned by the bankruptcy trustee, and as a result, the bankruptcy trustee remains the real party in interest under F.R.Civ.P. Rule 17. Therefore, the defendants argue that the plaintiff's claim must be dismissed or alternatively, the bankruptcy trustee should be substituted to pursue this claim. The court must now determine if the plaintiff's claim was indeed abandoned by the bankruptcy trustee, and if it was not, whether dismissal or substitution is the proper course in this case.

## II. DISCUSSION

Once bankruptcy has been filed, any unliquidated lawsuits initiated by a debtor, including lawsuits for personal injury, become part of the bankruptcy estate subject to the sole direction and control of the bankruptcy trustee. 11 U.S.C. § 541(a)(1).[9] The lawsuit will remain a part of the bankruptcy estate unless the trustee surrenders or "abandons" such suit to the debtor plaintiff to pursue. 11 U.S.C. § 554(d)[10]. In the event that such a lawsuit is not abandoned to the debtor plaintiff, Federal Rules of Civil Procedure Rule 17 requires that any action filed by a debtor plaintiff be dismissed or that the trustee, as a "real party in interest" be substituted.[11] *In re Cottrell,* 876 F.2d 540 (6th Cir.1989), *Sierra Switchboard v. Westinghouse Electric Corp.,* 789 F.2d 705 (9th Cir.1986). Turning to the matter at hand then, unless it can be shown that the trustee has abandoned the plaintiff Mele's suit under procedures specified by the Bankruptcy Code, the trustee remains the "real party in interest" and the plaintiff's action must be dismissed or the bankruptcy trustee substituted pursuant to F.R.Civ.P. Rule 17.

Express abandonment under the Bankruptcy Code can occur in several ways not relevant here[12] as the plaintiff in this action avers that abandonment was achieved solely by virtue of 11 U.S.C. § 554(c). Under this section, property in the bankrupt estate may be abandoned *by implication* where the debtor has listed property in the

5. Transcript of April 8, 1991 Hearing at 62 (testimony of Steven K. Davidson).

6. *Id.* at 63.

7. *Id.* at 34 (testimony of U.S. Bankruptcy Trustee Joel Klein).

8. *Id.* at 7.

9. Under 11 U.S.C. § 541(a)(1), "all legal [and] equitable interests of the debtor in property as of the commencement of the case" became part of the bankruptcy estate under the exclusive control of the bankruptcy trustee.

10. § 554(d) provides that property neither abandoned nor administered in the bankruptcy proceeding "remains property of the estate."

11. Rule 17 requires that "every action be prosecuted in the name of the real party in interest." In addition, an action shall not "be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

12. These sections deal with situations where the trustee, with notice and opportunity for hearing to the creditors, *expressly* abandons property of the bankruptcy estate, § 554(a) and (b).

appropriate bankruptcy filings[13] but that property is not administered by the trustee before closing the case. However, under § 554(d), unadministered property will remain in the bankruptcy estate unless it has been *expressly* abandoned under other provisions of § 554. In the face of these two apparently contradictory provisions, reference can be made to other sections of the Bankruptcy Code and case law to determine when implied abandonment has properly occurred under § 554.

At the outset, the court notes that the party seeking to demonstrate abandonment bears the burden of persuasion. *Barletta v. Tedeschi,* 121 B.R. 669, 672 (Bankr.S.D. N.Y.1990), *citing Hanover Insurance Co. v. Tyco Indus., Inc.,* 500 F.2d 654, 657 (3rd Cir.1974). With this in mind, the plaintiff argues that he need only show that the trustee was notified of the pending lawsuit, and that this lawsuit was not administered at the close of the bankruptcy case in order to show that it was abandoned. The plaintiff's position however is contrary to other provisions in the Bankruptcy Code delineating the duties and responsibilities of the trustee and is not consistent with the burden of proof imposed upon the plaintiff in showing implied abandonment.

In bankruptcy proceedings, the trustee's position is like that of a fiduciary to both the debtor and creditors. Under the Code, he must investigate all sources of income for the estate and "collect and reduce to money the property of the estate." 11 U.S.C. § 704(1) and (4). He has the duty to maximize the value of the estate, *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 353, 105 S.Ct. 1986, 1993, 85 L.Ed.2d 372 (1985), and in so doing is "bound to be vigilant and attentive in advancing [the estate's] interests." *Matter of Baird,* 112 F. 960 (D.C.Cir.1902). "In short, it is the trustee's duty to both the debtor and the creditor to realize from the estate all that is possible for distribution among the creditors." 4 Collier, Bankruptcy ¶ 704.01 (15th ed.).

Abandonment, when properly affected, is not inconsistent with the trustee's duty to maximize the estate for the benefit of the creditors. On the contrary, abandonment provisions are designed to allow the trustee to relinquish assets that would be a financial drain on the estate, or relieve the trustee of the financial burden of administering inconsequential assets that would cost more than they are worth to the estate. *See* 11 U.S.C. § 554(a) and (b);[14] *In re Moore,* 110 B.R. 924 (Bankr.C.D.Calif.1990). However, at the risk of belaboring the obvious, the trustee may not abandon those assets that would certainly benefit the estate and satisfy the debts owing to the creditors. Likewise, a trustee may not disregard or overlook substantial assets that could potentially contribute to the estate. And more specific to the issue here, a trustee may not simply ignore ongoing discussions to settle pending litigation filed by the bankrupt debtor. *Cf. In re Moore,* 110 B.R. at 928.

Therefore, in keeping with the fiduciary duty imposed upon the trustee, it is clear then that the mere fact the trustee was notified of the pending lawsuit, but yet failed to administer it, will not necessarily mandate a finding of implied abandonment.[15] To hold otherwise would as a prac-

13. Or more precisely, "scheduled" under § 521(1) under the Bankruptcy Code.

14. 11 U.S.C. § 554 provides in pertinent part:

(a) After notice and hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value.

15. The plaintiff is correct in noting that only property that has been brought to the trustee's attention can later be deemed abandoned under § 554(c). The plaintiff also correctly notes that the purpose of this requirement is to "relieve the trustee of the burden of conducting a rigorous search of the debtor's records to discover assets of the estate." Plaintiff's Opposition at 4, *citing In re Medley,* 29 B.R. 84, 87 (Bankr.M.D.Tenn. 1983). However, it is difficult to see how this line of reasoning supports the plaintiff's conclusion that notification then relieves a trustee from making an adequate inquiry to determine the relative worth of those assets before impli-

tical matter absolve a trustee of his statutory duties to the creditors and the estate, and essentially read the "fail-safe" provision of § 554(d) out of the Bankruptcy Code. Instead, case law and other provisions of the Bankruptcy Code suggest that notification of pending claims is not sufficient to establish implied abandonment. Rather, it must also be shown that the abandonment of a claim is the "result of an intelligent decision" by the trustee—and such an "intelligent decision" can be made only on the basis of all reasonably available information. *In re Schmid,* 54 B.R. 78, 80 (Bankr.D.Or.1985); *cf. In re Atkinson,* 62 B.R. 678, 680 (Bankr.D.Nev.1986) (Trustee reviewed court records with counsel and thus made an informed decision not to pursue claims). Accordingly, in order to prove that an implied abandonment was indeed effected, the plaintiff must show at a minimum that the trustee made a reasonable inquiry consistent with his statutory duties *to the estate* and *to the creditors* as to the value of estate property before impliedly abandoning it through the filing of a "no asset" report.

At the time the trustee was notified of the plaintiff's pending lawsuit, the suit's immediate settlement value was *at the very least* somewhere around $100,000.[16] The question then is to what extent was the trustee required to educate himself as to the lawsuit's worth to the estate. The trustee testified that he looked at a copy of the complaint filed in this matter, realized that the lawsuit in question was "an AIDS case" and then simply inquired as to the plaintiff/debtor's own (admittedly unprofessional) opinion as to the probability of the case's success on the merits. That the trustee chose to end his inquiry there however does not comport with a trustee's duty to "investigate the financial affairs of the debtor" as required by 11 U.S.C. § 704(4) in a manner that would enable the trustee to reasonably fulfill his fiduciary duty to "maximize the value of the estate." *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. at 353, 105 S.Ct. at 1993. At the very least, a simple phone call to the debtor's discrimination suit counsel would have disclosed that at least four "deep pocket" defendants had put out settlement "feelers" at a six-figure sum, and that the plaintiff's counsel felt the case worth considerably more.

The court notes that this is not a situation where an asset, after adequate inquiry, is determined to be of inconsequential worth at the time of bankruptcy, but then circumstances change such that the asset becomes substantially more valuable after the case has been closed.[17] Instead, all the facts necessary to value the lawsuit existed at the time of bankruptcy and were readily available to the trustee; moreover, those facts establish, as the trustee concedes, that there were potential settlement proceeds from the lawsuit available which would have provided a considerable benefit to the bankruptcy estate.[18] Nor is the court confronted with the situation where a trustee has made a reasonably diligent inquiry as to an asset's worth. Here the trustee did little more than ask the plaintiff what he thought of his own case, read the complaint, and made his decision. Therefore, the plaintiff cannot now claim that the lawsuit was abandoned as a result of the trustee's *informed* decision to "no asset" the bankruptcy case because there simply is no "informed decision" that the court may now review. Since the plain-

edly abandoning them through the filing of a "no asset" report.

16. Moreover, the trustee testified that had he known that fact, it would have changed his conduct regarding the filing of a "no asset" report." Transcript of Hearing at 25.

17. Were that the case, the result might have been different as normally the bankruptcy trustee is precluded from reclaiming property that subsequently increases in value. *In re Polumbo,* 271 F.Supp. 640 (D.C.Va.1967).

18. The court does not suggest that the trustee was or would be required to accept a settlement for the plaintiff's lawsuit, nor is the court suggesting that the trustee may not later abandon the lawsuit upon a reasoned decision that the suit would be "burdensome or of inconsequential value." The court merely states that given the facts of this case, the trustee may not bury his head in the sand and virtually ignore the potential proceeds to be derived from the plaintiff's litigation. *In re Moore,* 110 B.R. 924, 928 (Bankr.D.Calif.1990).

tiff's case was neither expressly nor impliedly abandoned under § 554, the lawsuit remains an unadministered asset of the bankruptcy estate under 11 U.S.C. § 554(d).

## III. CONCLUSION

The court finds that the plaintiff's action against the defendants remains an unadministered asset of the bankruptcy estate for the plaintiff. Therefore, the plaintiff is not a real party in interest and may not continue to prosecute this action. F.R.Civ.P. 17. However, Rule 17 states that an action should "be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest." Accordingly, the court will allow a reasonable time for substitution of a bankruptcy trustee.