936 P.2d 1141 (1997)
86 Wash.App. 145
Gary STEVENS, Appellant/Cross-respondent,
v.
CITY OF CENTRALIA, Respondent/Cross-appellant.
No. 18836-8-II.
Court of Appeals of Washington, Division 2.
March 28, 1997.
Publication Ordered May 9, 1997.
As Amended June 6, and July 3, 1997.
*1143 Jocelyn Jean Lyman, Law Lyman Daniel, Kamerrer & Bogdanovich, Olympia, for Respondent Cross-Appellant.
Paul Alexander Lindenmuth, Law Offices of Neil J. Hoff, Tacoma, for Appellant Cross-Respondent.
*1142 HOUGHTON, Chief Judge.
City Light of Centralia (City Light) terminated Gary Stevens' employment and Stevens sued for discrimination and retaliatory discharge. City Light filed three summary judgment motions; the case was dismissed on the third motion for failure to adhere to the claim filing requirements of RCW 35A.31.030. City Light cross-appeals the denial of its first, and a portion of its second motion for summary judgment, claiming that independent bases support dismissal of Stevens' suit. We hold that Stevens properly "tendered" or presented his claim and therefore reverse the trial court's dismissal for failure to comply with statutory notice requirements. We also affirm the trial court's denial of City Light's first summary judgment motion, but reverse the trial court's denial of a portion of City Light's second summary judgment motion. Thus, although Stevens' claims were properly presented, his case ultimately fails to survive summary judgment challenge and is dismissed in its entirety.

FACTS
City Light first hired Gary Stevens in 1966. After a break in employment, Stevens returned to City Light as a journeyman lineman in 1972. Stevens is a union employee, covered by a collective bargaining agreement between the International Brotherhood of Electrical Workers and City Light.
Throughout his employment with City Light, Stevens had health concerns that required him to take sick leave. City Light fired Stevens in 1982 for unavailability due to illness and for "behavioral reasons." An arbitration was held pursuant to Stevens' union contract, and he was reinstated. The arbitrator did not consider Stevens' absenteeism sufficient for dismissal, but warned Stevens about his attitude.
Stevens exhausted his allotted sick leave in mid-December 1989, and City Light placed him on a five-day paid suspension. After meetings on January 2 and 3, 1990, involving City Light, Stevens, and his union representative, Stevens met with a private attorney. In a meeting on January 5, 1990, Stevens was asked to sign a letter stating that he would be terminated if he failed to significantly reduce his sick leave usage. The letter specifically preserved Stevens' grievance rights in future actions by City Light. Stevens refused to sign the letter until his private attorney had an opportunity to review it. The refusal to sign resulted in his discharge.
Stevens submitted a grievance contesting his discharge and requesting reinstatement and back pay. An arbitrator held a hearing on the grievance pursuant to Stevens' union agreement on May 3, 1990. Stevens' grievance was denied on July 12, 1990. In a 54-page decision, the arbitrator found that City Light had good cause to terminate Stevens. The decision included all the arbitrator's factual findings concerning the matter.
Stevens applied for benefits with the Department of Labor and Industries after his discharge, claiming that he was unable to work. This claim was denied and Stevens appealed to the Board of Industrial Insurance Appeals. Later, the appeal was withdrawn, and Stevens applied for disability insurance benefits with the Social Security Administration (SSA). Stevens stated in his SSA application that as of January 5, 1990, the date of his discharge, he was unable to work due to his disabling condition. An administrative law judge granted Stevens' SSA claim on March 4, 1993, and awarded him retroactive benefits.
Stevens filed for bankruptcy after his discharge from City Light. He included within the asset schedule a "[p]otential lawsuit against City of Centralia for wrongful termination / discrimination." The bankruptcy trustee ultimately filed a report indicating that Stevens' petition was a "no-asset" case. The trustee took no action on the "potential" asset, and the bankruptcy court discharged Stevens under U.S.C.A. 11 U.S.C. § 7.
*1144 As expiration of the statute of limitations on his wrongful termination and discrimination claims drew near, Stevens met with his present attorney, who prepared an administrative claim for damages and a complaint and summons for filing. Stevens' attorney gave him instructions for filing the claims.
On December 30, 1992, Stevens went to City of Centralia Clerk's Office. He told the clerk that he wished to file a claim for damages. The clerk told Stevens that he could not file the claim unless it was presented on a pre-printed form provided by the City of Centralia. Although Stevens informed the clerk that his lawyer had told him to file the claim, the exact consequences of failing to file were not discussed. The clerk gave Stevens a copy of the form. Stevens then proceeded to the courthouse, where he filed the summons and complaint.
Stevens could not contact his attorney, so he took the pre-printed form to his attorney's office the next day. His attorney told Stevens to return to the City of Centralia Clerk's Office and demand that the clerk accept his claim. This time Stevens "absolutely insisted" to the city clerk that the claim for damages be filed "as is." The clerk relented and the claim was filed on December 31, 1992. Had the claim been accepted when it was first presented, it is undisputed that it would have been filed before the summons and complaint.
The statute of limitations on Stevens' claim expired on January 5, 1993. Thereafter, City Light presented the first of three motions for summary judgment of dismissal. City Light argued in this motion that the lawsuit was still under the control of the bankruptcy trustee and that Stevens did not have standing to bring the action. This motion, and a motion for reconsideration, were denied.
City Light brought a second motion for summary judgment, alleging that prior administrative adjudications by SSA and the arbitrator had a collateral estoppel effect on Stevens' claim. This motion was granted in part and denied in part. The trial court ruled that the findings and decisions of the arbitrator and SSA would be given collateral estoppel effect in further proceedings. The trial court did not, however, determine that the findings precluded Stevens from presenting a prima facie case for discrimination as a matter of law.
Finally, City Light brought a third motion for summary judgment, alleging lack of evidence to support the claim, and a violation of statutory claim filing procedures under RCW 35A.31.030. The motion was granted and Stevens' case was dismissed.
Stevens appeals the trial court's decision granting City Light's third motion for summary judgment. City Light cross-appeals the trial court's decision denying its first and part of its second motions for summary judgment, in the event Stevens' appeal is successful.

ANALYSIS
The standard of review of an order of summary judgment is de novo. Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994). Summary judgment is appropriate under CR 56 only if the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). The court must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wash.2d 1, 12-13, 721 P.2d 1 (1986).
RCW 35A.31.030
City Light argues that Stevens' claim was properly dismissed because he failed to comply with the state's claim filing statute, RCW 35A.31.030. This statute requires a party to: (1) file an administrative claim with the City of Centralia's clerk; and (2) wait a period of 60 days before filing a lawsuit. The relevant portion of the statute, as it existed before 1993, is as follows:

*1145 No action shall be maintained against any code city[1] for any claim for damages until the same has been presented to the legislative body of the city by filing with the clerk and sixty days have elapsed after such presentation.
Laws of 1967, 1st Ex.Sess., ch. 119, § 35A.31.030.
Constructive Filing
Stevens asserts that his claim for damages[2] was "constructively filed" when he first presented it. He supports this position by analogizing to the substitute service of process provisions of RCW 4.28.080. Stevens asserts that just as an attempt to yield possession of service documents to the party being served is sufficient for "delivery," his attempt to file with the clerk should be sufficient for "presentation."[3]See, e.g., United Pac. Ins. Co. v. Discount Co., 15 Wash.App. 559, 561-62, 550 P.2d 699 (1976).
Here, the case is more analogous to "tendering" a claim that is refused. Under such circumstances, City Light waived any lack of formality in the "tender" by refusing to accept the claim. See Huber v. Home Sav. & Loan Ass'n, 99 Wash. 593, 596, 169 P. 979 (1918). Therefore, we hold that under the facts of this case, Stevens' claim was "constructively accepted" at the point he first "tendered" or presented it to the correct City office clerk. To allow the clerk to refuse to accept what is otherwise a proper complaint would lead to an inequitable result. As such, the trial court improperly granted City Light's third motion for summary judgment.
City Light's Cross-Appeal
Having reversed the trial court's decision granting City Light's third motion for summary judgment, we must consider City Light's cross-appeal. City Light contends that the trial court erred in denying its first motion for summary judgment, and in partially denying its second motion for summary judgment.
City Light's First Motion for Summary Judgment
In City Light's first motion for summary judgment of dismissal, it argued that Stevens did not have standing to litigate his discrimination claim because it was still part of the bankruptcy estate and still under the control of the bankruptcy trustee. The trial court denied the motion and City Light's motion for reconsideration, finding that the asset was abandoned to Stevens, at least for the purpose of bringing suit. The trial court left open the possibility that the bankruptcy proceeding might be reopened for the benefit of Stevens' creditors if he received an award in the case.
The issue turns on the following question: When is an asset abandoned in a bankruptcy proceeding such that it passes back into the control of the debtor?
Abandonment in bankruptcy is covered by 11 U.S.C. § 554. Subsections (a) and (b) grant power to the trustee to abandon property that is burdensome or of inconsequential value to the estate. Such abandonment requires notice and a hearing for creditors of the estate. Subsections (c) and (d), which Stevens relies on, state:
(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title. (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.
The plain language of the statute establishes that property properly scheduled for bankruptcy *1146 under § 521(1) that remains after the case is closed, reverts to Stevens. The debtor stands in relation to the property as if no bankruptcy petition had been filed. In re McGowan, 95 B.R. 104 (Bankr.N.D.Iowa 1988).
City Light argues that Rule 6007 of the Bankruptcy Code "further delineates the notice and hearing requirement" of § 554. The relevant portion of that rule is as follows:
(a) Notice of proposed abandonment or disposition; objections; hearing Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, [and] indenture trustees....
11 U.S.C. Rule 6007. The advisory committee note after Rule 6007, however, states: "This rule does not apply to § 554(c). Pursuant to that subsection, property is deemed abandoned if it is not administered." Advisory Committee Note, 11 U.S.C.A. Rule 6007 (1984). Thus, by the plain language of the statute, the property reverts to Stevens.
City Light relies upon Mele v. First Colony Life Ins. Co., 127 B.R. 82 (D.D.C.1991). In Mele, a debtor's discrimination suit against several life insurance companies was held to be an unadministered asset of the debtor's bankruptcy estate even after the asset was scheduled properly, not acted on by the trustee, and the case was closed. The trustee was held to be a real party in interest, required to be substituted as a plaintiff under CR 17. The court stated that as fiduciaries to both the debtor and creditors, trustees have a duty to investigate assets and make an intelligent decision on whether to abandon them. Mele, 127 B.R. at 86. Had the trustee in Mele investigated the claim, he would have discovered a settlement offer of at least $100,000. Mele, 127 B.R. at 86. There is certainly a distinction between a potential claim that has never been filed and one in which there are already settlement offers.
Here, even if the bankruptcy trustee had had an interest in Stevens' claim, dismissal would have been improper. As stated in Mele, the bankruptcy trustee would need to be substituted as a real party in interest. Mele, 127 B.R. at 84. This situation is governed by CR 17, which requires that the court provide a reasonable time to attempt to join the real party in interest. Once the trustee was joined, the case would proceed as if brought in that name originally. CR 17(a). In short, the trial court properly denied City Light's first motion for summary judgment.
City Light's Second Motion for Summary Judgment
In its second motion for summary judgment of dismissal, City Light argued that findings from prior adjudications by an arbitration panel and the SSA, should be given collateral estoppel effect. In addition, City Light claimed that these findings prevented Stevens from establishing his discrimination claims.
The motion was granted in part and denied in part. The trial court gave collateral estoppel effect to the arbitrator's finding that City Light had to fire Stevens for unsatisfactory job performance due to excessive absenteeism.[4] The trial court refused to dismiss the case, however, concluding that Stevens could still state viable discrimination and retaliation claims. In addition, the trial court also gave collateral estoppel effect to the SSA's determination that Stevens was wholly unable to do any kind of work. Stevens' inability to do any kind of work was found to have begun the moment that he was fired.
First, City Light contends that Stevens has not appealed the trial court's ruling giving collateral estoppel effect to the administrative adjudications. Thus, City Light asserts that these arguments are waived on *1147 appeal. Detonics ".45" Assocs. v. Bank of Cal., 97 Wash.2d 351, 353, 644 P.2d 1170 (1982). City Light is correct. We hold that Stevens' failure to appeal this ruling waives any argument that the findings do not receive collateral estoppel effect.
Stevens brought his claims under the Washington Law Against Discrimination (WLAD). RCW 49.60. In order to establish a prima facie case of discrimination under the WLAD, Stevens must prove: "(1) that he was handicapped, (2) that he had the qualifications required for the position, and (3) that the employer failed to take affirmative measures to make a job opportunity known to him and to determine whether he was qualified for the position." Swinford v. Russ Dunmire Oldsmobile, Inc., 82 Wash. App. 401, 414, 918 P.2d 186 (1996), review denied, 130 Wash.2d 1024, 930 P.2d 1231 (1997). The third element is referred to as the employer's "duty to reasonably accommodate." Swinford, 82 Wash.App. at 414, 918 P.2d 186.
Under Washington law, "[t]he duty of an employer reasonably to accommodate an employee's handicap does not arise until the employer is `aware of respondent's disability and physical limitations.'" Goodman v. Boeing Co., 127 Wash.2d 401, 408, 899 P.2d 1265 (1995) (quoting Holland v. Boeing Co., 90 Wash.2d 384, 391, 583 P.2d 621 (1978)). This duty is based in part upon language from the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5)(A) (Supp. V 1994), which requires reasonable accommodation for "known" disabilities. Thus, Stevens bears the burden of giving City Light notice of his disability. Goodman, 127 Wash.2d at 408, 899 P.2d 1265. This notice then triggers City Light's burden to take "positive steps" to accommodate Stevens' limitations. Goodman, 127 Wash.2d at 408, 899 P.2d 1265.
Stevens is not required to tell City Light about the full nature and extent of the disability, only that a disability requiring accommodation exists. Goodman, 127 Wash.2d at 408, 899 P.2d 1265. The idea of reasonable accommodation under the WLAD envisions an "exchange" between the employee and the employer, in which each seeks and shares information to achieve the best match between the employee's capabilities and any available position. Goodman, 127 Wash.2d at 408-09, 899 P.2d 1265. In addition, the WLAD does not impose an investigatory duty on the employer to question any employee suspected of a disability. The employer's duty to inquire arises only after the employee has initiated the process by notice, and extends only to ensure that the employer has sufficient information to accommodate the disability. Goodman, 127 Wash.2d at 409, 899 P.2d 1265.
Stevens asserts that the trial court was correct in allowing his claim to proceed. Citing the strong policy language of RCW 49.60, and the fact that courts are required to construe the statute liberally; he argues that the prior adjudications were not sufficient to dismiss his claim. The issue, on summary judgment, is whether the plaintiff has produced some evidence "that a reasonable trier of fact could, but not necessarily would," draw an inference that an impermissible motive came into play in the adverse employment decision. Sellsted v. Washington Mut. Sav. Bank, 69 Wash.App. 852, 860, 851 P.2d 716, review denied, 122 Wash.2d 1018, 863 P.2d 1352 (1993).
We hold that Stevens is prevented from establishing his prima facie case of discrimination due to the collateral estoppel effect of previous findings that: (1) Stevens' work performance was unsatisfactory and there was just cause for his discharge, and (2) Stevens was completely disabled and unable to perform any kind of gainful employment at the time of his discharge. In addition, we hold that Stevens did not give City Light sufficient notice of his disability to begin the "exchange" on accommodation. Thus City Light did not have a duty to reasonably accommodate him. Goodman, 127 Wash.2d at 408, 899 P.2d 1265.
In summary, the trial court erred in dismissing Stevens' complaint for failing to satisfy the claims filing statute. But because of the collateral estoppel effect given to the SSA's finding, and because Stevens failed to give City Light adequate notice of his disability, City Light was entitled to summary judgment of dismissal.
*1148 The trial court is affirmed in part and reversed in part.
MORGAN, J., and TURNER, J. Pro Tem., concur.
NOTES
[1] City Light is a municipal corporation.

In 1993, the Legislature amended RCW 4.96.010 to provide a single procedure for claims against all local government entities. This amendment includes a provision which tolls the applicable statute of limitations while the 60-day waiting period is in effect. The amendment did not take effect, however, until July 25, 1993, and the pre-amendment version applies here.
[2] It is undisputed that the contents of the claim Stevens attempted to file on December 30, 1992, were proper.
[3] RCW 35A.31.030 requires that the claim for damages be "presented" to City Light by filing with the clerk.
[4] The doctrine of collateral estoppel prevents relitigation of an issue previously decided, in order to promote the policy of ending disputes, judicial economy and preventing harassment of the litigants. Hanson v. Snohomish, 121 Wash.2d 552, 852 P.2d 295 (1993). The party asserting collateral estoppel must show the following: (1) the issue in both actions is identical; (2) the prior adjudication ended in a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or was in privity with a party to the prior action; and (4) application of the doctrine does not work an injustice.