104 P.3d 677 (2004)
124 Wash.App. 550
Dianna BURNETT, a single person, Ken and Maribeth Clement, husband and wife, Very Fry, a single person, Rochelle Greenwald, a single person, Jim and Annette Potter, husband and wife, Donald Rogers, a single person, William and Shelia Salomone, husband and wife, Deborah Shade, a single person, James *678 Stenklyft, a single person, John S. Stocks as personal representative for the estate of Joseph C. Stocks, Warren Walberg, a single person, Maurice and Linda Willis, husband and wife, Thurston County Appellants,
Winfred and Janet Averill, husband and wife, William Averill, a single person, Dean E. Coots, a single person, Jeannette L. and Frank W. Coffell, husband and wife, Stephen D. Fisher, a single person, Kimberlee D. and Scott M. Holder, husband and wife, Cynthia J. Jones, a single person, Angela Jones-Smith, a single person, Brian Scott Jones, a single person, Suk Am Kim and Sang Ae Kim, husband and wife, Dino J. Mangini, a single person, Wallace E. and Maria S. Potter, husband and wife, and Terry T. Wright, a single person, Pierce County Appellants,
v.
TACOMA CITY LIGHT, a division of the Department of Public Utilities of the City of Tacoma, the State of Washington, as obligor for Thurston County Emergency Management and Pierce County Emergency Management, Respondents.
No. 30914-9-II.
Court of Appeals of Washington, Division Two.
December 7, 2004.
A Corrected January 25, 2005.
*680 Kimberlee Holder and Jim (Arnold James) Potter, pro se.
John Stocks, Van Siclen Stocks & Finkins, Auburn, for appellants.
Paul Francis James, Attorney Generals Office, and Timothy R. Gosselin, Tacoma, for respondents.
HUNT, J.
Dianna Burnett and 31 other Nisqually River and floodplain residents who suffered damage from flooding appeal the trial court's dismissal of their action against Tacoma City Light/City of Tacoma, operator of up-river dams, and the State of Washington, obligor of County Emergency Management Services. They argue the trial court erred in ruling that (1) County Emergency Management Services owed them no special duty to warn of impending flood waters; (2) a Thurston County Commissioner's statements about the emergency response were inadmissible; and (3) the second group of residents failed to file their claims properly with the City Clerk. Holding that the process for filing claims against the City requires strict compliance and that the residents failed to establish an exception to the public duty doctrine, we affirm.

FACTS

I. THE FLOOD
Tacoma City Light (City Light) operates two dams on the upper Nisqually River, Alder and LaGrande. City Light uses these dams for flood control by storing excess water in the reservoirs behind the dams and limiting discharge. When heavy rains or snow-melt fill the reservoirs, the resultant unavoidable discharge increases the likelihood of downstream flooding. Thurston County Emergency Management (TCEM) and Pierce County Emergency Management (PCEM) (collectively, "the Agencies") had agreements with City Light requiring City Light to notify them of increased discharges from the LaGrande Dam.
On February 8, 1996, the Nisqually River experienced unprecedented flooding. Michael Karl was acting Director of TCEM, and William Lokey was Director of PCEM. On February 7, 1996, at 10:33 A.M., City Light notified the Agencies of an increase in dam discharge to 13,000 cubic feet per second (CFS). At 3:55 P.M., City Light notified TCEM that discharge had not yet reached 13,000 CFS but would probably do so later *681 that night. Karl was concerned that additional discharge over 13,000[1] CFS could begin to threaten property, particularly in the Old Nisqually area.
In response, at 4:00 P.M., Karl faxed flood status reports to local radio and TV stations for release to the public. TCEM enlisted local fire districts and the Thurston County Sheriff's Office to warn Nisqually area residents of possible flooding.
The next morning at 5:28 A.M., February 8, 1996, City Light notified the Agencies that dam discharge was increasing by 2000 CFS.[2] At 7:30 A.M., City Light notified the Agencies of an increase in discharge to 20,000 CFS. At that point, Karl realized flooding was imminent in the Old Nisqually area and contacted the sheriff's office, fire districts, and public works to warn local residents. At 8:30 A.M., Karl declared a local emergency. Fire trucks and volunteer reserve sheriffs were called out to warn lower Nisqually residents.
At 2:05 P.M., City Light notified the Agencies of an unprecedented discharge of 40,000 CFS, and the Agencies intensified efforts to warn residents to evacuate. Nonetheless, homes and properties flooded when fast rising waters breached the river's banks.

II. CLAIMS
Nisqually residents who suffered damage sued the City of Tacoma and the State of Washington, alleging that they received insufficient and untimely warnings before the flood. The first group of Nisqually residents, "Category I plaintiffs," properly filed their claims against the City of Tacoma with the City Clerk's office.[3]
Category II plaintiffs misfiled their claims with (1) the Tacoma City Attorney's Office, and (2) Tacoma's Public Utilities Department ("Department").[4] Robin Jenkinson, an attorney in the City Attorney's office,[5] and Noel Naumann, a management analyst for the Department,[6] signed for receipt of these claims.[7] But Naumann's log did not show that he had ever received Category II claims and, according to him, it would be unprecedented to have received such claims without logging them.

III. PROCEDURE
After the claims made their way to superior court, City Light moved to dismiss the Category II plaintiffs for failure to comply with the filing requirements of RCW 4.96.010, RCW 4.16.080, and TMC 1.06.228. The trial court granted partial summary judgment, dismissing the Category II plaintiffs' claims and leaving intact only Category *682 I plaintiffs' claims against City Light.[8]
Next, the State of Washington moved for summary judgment on both categories of plaintiffs' claims, asserting that it owed no duty to plaintiffs, that the public duty defense applied, and that there was no special relationship between plaintiffs and the State. The trial court granted the State's motion and dismissed all plaintiffs' claims against the State for failure to establish an exception to the public duty doctrine. The trial court also struck post-flood statements by Thurston County Commissioner Diane Oberquell (that the County had not done a good job in its emergency response)[9] as inadmissible hearsay.
After the remaining Category I claims against City Light were resolved in mediation, the trial court dismissed the case. All plaintiffs appeal.

ANALYSIS
We first address the trial court's dismissal of Category II plaintiffs' improperly filed claims against the City of Tacoma.[10]

I. FILING REQUIREMENTS FOR CLAIMS AGAINST THE CITY
Filing a claim for damages with a local government is a condition precedent to commencement of any court action for tort damages.[11] RCW 4.96.010(1). Claims for damages must be filed with the governing body of the government entity. RCW 4.96.020(2). Although we liberally construe claims content requirements to allow substantial compliance, RCW 4.96.010(1), we require strict compliance with procedural filing requirements. Hintz v. Kitsap County, 92 Wash.App. 10, 14, 960 P.2d 946 (1998). Strict compliance with procedural filing requirements is mandatory, even if the requirements seem "harsh and technical." Shannon v. Dep't of Corr., 110 Wash.App. 366, 369, 40 P.3d 1200 (2002) quoting Levy v. State, 91 Wash.App. 934, 957 P.2d 1272 (1998). Failure to comply with a notice of claim statute results in dismissal of the suit. Hintz, 92 Wash.App. at 14, 960 P.2d 946.
RCW 4.96.010 authorizes municipalities to enact claim filing ordinances. Wilson v. Seattle, 122 Wash.2d 814, 820, 863 P.2d 1336 (1993). The City of Tacoma has enacted a claim-filing ordinance that requires, "All claims for damages against the City shall be presented in writing and filed with the City Clerk." TMC 1.06.228(A) (emphasis added). The City Clerk's office and the Department provide the public with pre-printed forms expressly stating that claims must be filed with the Clerk's office and providing the address.
It is undisputed here that the Category II plaintiffs failed to file their claims with the City Clerk's office. Instead, their messenger service filed their claims with both the Tacoma City Attorney's Office and the Department. They argue that this filing constituted actual or substantial compliance so as to defeat dismissal of their claims. We disagree.

A. The City's Actual Knowledge
Category II plaintiffs argue that the City received sufficient actual notice of their claims when they filed with the City Attorney's Office and the Department. We have rejected similar arguments, even when officials knew of the claim. See, e.g., Kleyer v. Harborview Med. Ctr. of Univ. of Wash., 76 Wash.App. 542, 887 P.2d 468 (1995).[12] Even *683 assuming that the City had actual knowledge of the Category II plaintiffs' claims by virtue of their filing with the City Attorney and the Department, their failure to file with the Clerk's Office, as the ordinance directs, precludes their subsequent lawsuit against the City.

B. Constructive Receipt of Claims
Category II plaintiffs next argue that filing their claims with the City Attorney's office was constructive filing of these documents, citing Stevens v. City of Centralia, 86 Wash.App. 145, 936 P.2d 1141 (1997), in support. But Stevens is distinguishable. The plaintiff in Stevens went to the City Clerk's office and attempted to file a claim; the clerk refused to accept the claim for filing because the plaintiff had not used a pre-printed form. Stevens, 86 Wash.App. at 149, 936 P.2d 1141. Under those circumstances, we found constructive receipt because (1) the plaintiff timely presented his claim to the correct City office clerk, and (2) to allow the clerk to refuse an otherwise proper complaint would lead to an inequitable result. Stevens, 86 Wash.App. at 152, 936 P.2d 1141.
Here, however, the Category II plaintiffs never presented their claims to the City Clerk; nor did the City Clerk refuse to accept them, as was the case in Stevens. Rather, plaintiffs filed their claims with the wrong City employees in the wrong City offices. Accordingly, they have not established constructive receipt.

C. Futility
Finally, Category II plaintiffs argue it would have been futile to file their claims with the City Clerk because the same claims filed by Category I plaintiffs had already been denied months earlier. This argument fails.
RCW 4.96.010 and TMC 1.06.228 require the proper filing of claims against the City of Tacoma as a condition precedent to the commencement of "any" action claiming damages arising out of the City's alleged tortious conduct. As City Light argues, the broad language of "any" does not limit the requirement to novel or meritorious claims.
Furthermore, Division One of our court has affirmed dismissing an action where plaintiffs failed to file claims with the municipality properly before filing suit in court, even though there was "little purpose" in requiring proper filing. Kleyer, 76 Wash.App. at 547-48, 887 P.2d 468. See also Lewis v. Mercer Island, 63 Wash.App. 29, 35, 817 P.2d 408, review denied, 117 Wash.2d 1024, 820 P.2d 510 (1991) (holding that compliance with claim filing statutes is required even if the city is generally familiar with the complaints).
We reiterate that Category II plaintiffs' failure to comply strictly with statutory and ordinance requirements for filing claims against the City of Tacoma is an absolute bar to their lawsuit against the City in superior court. We hold, therefore, that the trial court properly dismissed Category II plaintiffs' action against the City.
We now turn to the trial court's summary judgment dismissal of all plaintiffs' claims against the State.

II. SUMMARY JUDGMENT

A. Standard of Review
When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. Wilson, 98 Wash.2d at 437, 656 P.2d 1030. The nonmoving party may not rely on speculation, argumentative assertions that unresolved factual issues remain, or having its affidavits considered at face value. Seven *684 Gables Corp. v. MGM/UA Entm't Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986).
After the moving party has submitted adequate affidavits, the burden shifts to the nonmoving party to set forth specific facts sufficiently rebutting the moving party's contentions and disclosing the existence of a material issue of fact. Seven Gables, 106 Wash.2d at 13, 721 P.2d 1. The court should grant the motion only if, from all the evidence, reasonable persons could reach but one conclusion. Wilson, 98 Wash.2d at 437, 656 P.2d 1030.

B. Public Duty Doctrine
The threshold determination in a negligence action is whether the defendant owes a duty of care to the plaintiff. Tincani v. Inland Empire Zoological Soc'y, 124 Wash.2d 121, 128, 875 P.2d 621 (1994). This is a question of law, which we determine de novo. Tincani, 124 Wash.2d at 128, 875 P.2d 621.
The public duty doctrine requires that the defendant owe a specific duty to the injured plaintiff rather than to the public in general. Taylor v. Stevens County, 111 Wash.2d 159, 163, 759 P.2d 447 (1988); see also Goggin v. City of Seattle, 48 Wash.2d 894, 899, 297 P.2d 602 (1956) (no municipal liability for failure to enforce ordinances). The policy supporting the public duty doctrine is that legislation for the public benefit should not be discouraged by subjecting the government to unlimited liability. Taylor, 111 Wash.2d at 170, 759 P.2d 447.
There are four exceptions to the public duty doctrine: (1) legislative intent; (2) special relationship; (3) volunteer rescue; and (4) failure to enforce. Babcock v. Mason County Fire Dist. No. 6, 144 Wash.2d 774, 786, 30 P.3d 1261 (2001). If an exception to the public duty doctrine applies, then the State has a specific duty to the plaintiff. Taggart v. State, 118 Wash.2d 195, 218, 822 P.2d 243 (1992). Plaintiffs argue only the first three exceptions, but none apply here.

1. Legislative intent
The legislative intent exception applies "when the terms of a legislative enactment evidence an intent to identify and protect a particular and circumscribed class of persons." Bailey v. Town of Forks, 108 Wash.2d 262, 268, 737 P.2d 1257 (1987). Plaintiffs argue that RCW 38.52.070 of the Washington Emergency Management Act requires local emergency agencies to protect persons and property from particular disasters and, thus, creates a specific statutory duty for the County to protect the residents living on the Nisqually River downstream from the City Light dams.[13] This argument fails to consider the legislative intent within the context of the entire statute. See State v. Elgin, 118 Wash.2d 551, 556, 825 P.2d 314 (1992).
To ascertain legislative intent, we look to the statute's declaration of purpose. Dorsch v. City of Tacoma, 92 Wash.App. 131, 134, 960 P.2d 489 (1998), review denied, 137 Wash.2d 1022, 980 P.2d 1283 (1999). This statute's "declaration of policy and purpose"[14] focuses on protecting "the public peace, health, and safety, and [preserving] the lives and property of the people of the state" in the event of a disaster. RCW 38.52.020(1) (emphases added). As the State correctly notes, "[T]he statute does not carve out a particular group of individuals that are owed a special duty of care by local emergency management agencies when responding to disasters." Br. of Respondent at 15. Rather, the statute contemplates protecting the "public" at large and "the people of the state." RCW 38.52.020(1).
To this end, the statute directs and empowers political subdivisions, such as cities *685 and counties, to take actions necessary to combat local disasters, RCW 38.52.070(2), but only in the context of providing for the general welfare. Such legislative empowerment does not evince legislative intent to identify and to protect Nisqually River residents as a "particular and circumscribed class of persons." Bailey, 108 Wash.2d at 268, 737 P.2d 1257.

2. No special relationship
Plaintiffs argue that the State entered into a special relationship with them, thus defeating the public duty doctrine. We disagree.
A special relationship exists if
(1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) give rise to justifiable reliance on the part of the plaintiff.
Beal v. City of Seattle, 134 Wash.2d 769, 785, 954 P.2d 237 (1998) (citation omitted). An "express assurance" arises where "a direct inquiry is made by an individual and incorrect information is clearly set forth by the government, the government intends that it be relied upon and it is relied upon by the individual to his detriment." Babcock, 144 Wash.2d at 789, 30 P.3d 1261. There was no such express assurance here.
Plaintiffs allege and the State denies contact between the Agencies and specific plaintiffs; but neither party supports its allegations with cites to the record. Although the Agencies did enlist the assistance of local fire districts and sheriff's departments to warn residents, the record contains no reference to direct contact between the Agencies and the Nisqually residents.[15] Even assuming there was such direct contact, the record contains no express Agency assurances on which plaintiffs justifiably relied to their detriment.

3. Volunteer rescue doctrine
Plaintiffs next argue the Agencies voluntarily assumed a duty to warn residents and such efforts were negligent because they provided insufficient and inadequate warnings and unreasonably increased the danger. A rescuer who fails to exercise reasonable care, and thereby increases the risk of harm to those he is trying to rescue, is liable for any damages he causes; the rescuer must gratuitously assume the duty to warn endangered parties and then fail to warn them. Smith v. State, 59 Wash.App. 808, 814, 802 P.2d 133 (1990), review denied, 116 Wash.2d 1012, 807 P.2d 884 (1991). The Supreme Court has declined to invoke the voluntary rescue doctrine where there was no affirmative act creating the harm, making the situation worse, or inducing reliance. Folsom v. Burger King, 135 Wash.2d 658, 677, 958 P.2d 301 (1998).
The Agencies here did not gratuitously assume a duty to warn residents along the Nisqually River of impending flooding. Rather, the Agencies were under statutory directive to protect "the public peace, health, and safety, and to preserve the lives and property of the people of the state." RCW 38.52.020(1). First, the Agencies had no control over the flood or its severity; and, therefore, they did not engage in an affirmative act creating the harm (flooding), increasing the harm, or inducing plaintiffs' detrimental reliance. Second, the Agencies broadcast flood warnings more than 12 hours in advance over local radio and TV stations. Emergency workers warned some individual residents to evacuate because the impending flood would be worse than the previous flood. That other emergency workers expressed uncertainty about the severity of the flood does not establish that the Agencies worsened the situation or induced plaintiffs' detrimental reliance. Viewing the facts in the light most favorable to plaintiffs, they have established *686 no exception to defeat the public duty doctrine.[16]
We hold, therefore, that the trial court did not err in granting summary judgment dismissal of plaintiffs' claims against the State.
Affirmed.
We concur: ARMSTRONG, P.J., and VAN DEREN, J.
NOTES
[1] Karl testified that 18,000 CFS is a more critical number because "that was the level at which structures along the Old Nisqually area started experiencing flood damage." Clerk's Papers (CP) at 1485.
[2] Karl testified that he should have and may have received this notification, but he could have been sleeping and he does not actually remember. The TCEM Operations Log does not show an entry between the hours of 3:30 and 7:30 A.M. on the morning of February 8, 1996.
[3] Tacoma Municipal Code (TMC) 1.06.228(A) requires, "All claims for damages against the City shall be presented in writing and filed with the City Clerk." The City Clerk's office and the City's Department of Public Utilities provide pre-printed forms expressly stating that claims against the City must be filed with the Clerk's office and provide the address.
[4] The record indicates that claims for both Categories I and II were addressed in the same manner but served by different legal messengers. Category I claims were properly filed with the City Clerk. Category II claims were not.
[5] Jenkinson testified that (1) the normal procedure was to sign for a delivery and to give the documents back to the receptionist who had the responsibility of handling the documents; and (2) although she represented the City Clerk's office in legal matters within the scope of her representation of the City of Tacoma, she lacked specific authority to accept claims notices, which state law and city ordinance required to be filed with the City Clerk's office.
[6] Naumann handled claims made against the Department. Claims generally came from the City Clerk's office. But sometimes claims came directly from claimants, in which case Naumann would generally make a formal record in his log and then, as a "customer service," forward the claim to the City Clerk's office, even though this was clearly the claimant's responsibility.
[7] Naumann's signature appears on the legal messenger's slip verifying service of "Claims for Damages" on February 5, 1999.
[8] These claims were resolved in mediation and, therefore, are not a part of this appeal against City Light.
[9] A newspaper article quoted Commissioner Oberquell, "We didn't do a good job this time." CP at 990. A video tape of a public meeting recorded Commissioner Oberquell saying, "We will have people around so that we can start getting some kind of a better warning system going. We did not do a good job this time and I admit it." CP at 1657.
[10] Properly filed Category I plaintiffs' claims against the City are not in issue on this appeal.
[11] RCW 4.96.010(1) authorizes claim filing ordinances only for damages arise out of tortious conduct of a local government entity. Wilson v. Seattle, 122 Wash.2d 814, 820, 863 P.2d 1336 (1993).
[12] In Kleyer, the plaintiff filed a claim with a claims manager at the University instead of the Office of Risk Management, as required by statute. Kleyer, 76 Wash.App. at 544, 887 P.2d 468. We affirmed the trial court's dismissal of the suit for failure to comply with the claim-filing statute. Kleyer, 76 Wash.App. at 543, 887 P.2d 468. The court reasoned that the filing requirement, unlike the content of the filing, is strictly enforceable. Kleyer, 76 Wash.App. at 545-46, 887 P.2d 468.
[13] RCW 38.52.070(1) directs each political subdivision of the state "to establish a local organization ... for emergency management in accordance with the state comprehensive emergency management plan" and provides guidance on procedures and operations for such organizations. RCW 38.52.070(2) grants power to each political subdivision in which a disaster occurs "to enter into contracts and incur obligations necessary to combat such disaster, protecting the health and safety of persons and property, and providing emergency assistance to the victims of such disaster."
[14] RCW 38.52.020.
[15] Plaintiffs claim that they received express assurances from emergency workers that the flood would be as bad or similar to the November 1995 flood, even though the agencies knew that this flood would be worse. This claim is wholly unsupported by the record. Plaintiffs cite numerous conversations between emergency workers and residents, but resident inquiries were met with uncertainty, or predictions that the impending flood would be worse than the previous flood.
[16] Plaintiffs also argue that the trial court erred in striking Commissioner Oberquell's out-of-court statement that Thurston County did not handle the Nisqually flood well. In light of our affirmance of the trial court's grant of summary judgment, we need not address this issue, which has no bearing on whether plaintiffs established an exception to the public duty doctrine.