[No. 17900-8-II.    Division Two.    June 28, 1996.]

JOHN SWINFORD, *Appellant*, v. RUSS DUNMIRE OLDSMOBILE, INC., *Respondent*.

---

404

*Paul A. Lindenmuth* and *Law Offices of Neil J. Hoff*, for appellant.

*Philip R. Sloan, Roxanna J. Coolidge*, and *Sloan, Bobrick & Oldfield, Inc., P.S.*, for respondent.

TURNER, J. — Swinford sued his employer, Russ Dunmire Oldsmobile, Inc., for unlawful termination, alleging handicap discrimination and breach of contract based on an employee handbook. Russ Dunmire answered, claiming that Swinford's breach of contract claim was preempted by federal labor law because his job position was governed by a collective bargaining agreement (CBA). The trial court directed a verdict in favor of Russ Dunmire on Swinford's handicap discrimination claim, and the jury returned a verdict in favor of Russ Dunmire on the other claims. Swinford appeals the directed verdict that was granted against his handicap discrimination claim. Russ Dunmire appeals the denial of its directed verdict motion on the breach of contract claim. We hold that federal law preempts Swinford's state law breach of contract claim because it requires interpretation of the CBA. Accordingly, Russ Dunmire's directed verdict motion should have been granted. Because the jury rendered a verdict for Russ Dunmire on this claim, we affirm the judgment of dismissal. Additionally, we affirm the directed verdict in

favor of Russ Dunmire on Swinford's handicap discrimination claim because Swinford failed to establish he was handicapped.

## FACTS

John Swinford was in Russ Dunmire Oldsmobile's (Russ Dunmire) employ for over five years. Swinford was a member of the International Association of Machinists, Local 1152. During Swinford's employment with Russ Dunmire, and at the time of his termination, there was a collective bargaining agreement (CBA) between the dealership and the union. Under the terms of the CBA, Swinford could be discharged for "just cause."

In February 1990, Russ Dunmire issued an "Employee Handbook" to its employees. The employees were requested to sign an acknowledgement of receipt of the handbook. The acknowledgement provided that the handbook was not a set of promises or an employment contract; it did not alter the "at will" employment arrangement; and employer representations would not supersede the acknowledgement. Swinford and other union employees refused to sign the acknowledgement because its "at will" language conflicted with the "just cause" provisions in the CBA. Instead, Swinford and other union employees circled and signed only the portion of the acknowledgement that stated they received the handbook.

In July 1990, Swinford had a motorcycle accident that rendered him temporarily unable to work. He met with Ben Lewis, his supervisor, to discuss the implications for his job. Swinford and Lewis reviewed the leave of absence provisions in the employee handbook. The handbook included a provision on "Leaves of Absence," a right not provided in the CBA. The handbook provided, in part, that "[e]mployees granted a leave of absence will retain their Company service rights for a period of three months while on leave." Lewis later discussed Swinford's situation with the owner, Roger Dunmire, who then consulted a

labor management consultant. The consultant drafted a letter to Swinford, which was signed by Lewis. The letter said:

> The purpose of this letter is to acknowledge the fact that you are on a medical leave effective July 16, 1990. We agree to grant such a leave as long as you report back to work no later than October 16, 1990. This is consistent with our employee handbook that you received. You will be required to present a doctors [*sic*] certificate confirming your ability to work and, if any, the limitations that may apply to your returning to the same type of work. . . .

During Swinford's absence, Russ Dunmire hired a temporary replacement for Swinford.

In late August 1990, Swinford's physician said he could return to work on September 29, 1990. Swinford relayed this information to Lewis. Nevertheless, on September 14, 1990, Lewis told Swinford that his employment with Russ Dunmire had been terminated. In a letter to Swinford, Lewis said the termination was "based on our locating a replacement employee for your position that better met our company's productivity standards than you ever demonstrated in your employment with our company."

Swinford sued Russ Dunmire, alleging breach of contract, handicap discrimination, and unlawful termination. Russ Dunmire answered that the breach of contract claim was preempted by federal law. The court granted Russ Dunmire's motion for a directed verdict on the handicap discrimination claim. The jury returned a special verdict in favor of Russ Dunmire on the remaining claims. Swinford alleges that the trial court erred in instructing the jury, in directing a verdict on his handicap discrimination claim, and by denying his motion for a new trial. Russ Dunmire cross-appeals, arguing that the trial court erred in failing to dismiss Swinford's breach of contract claim on the ground that it was preempted by federal law.

## ANALYSIS

### 1. Breach of Contract Claim

Russ Dunmire contends that the trial court erred in denying its motions for summary judgment[1] and a directed verdict on the ground that the breach of contract claim was preempted by federal law. We agree.

■ Although the employee handbook in this case stated it was not a set of promises or employment contract, it did contain leave of absence provisions not included in the collective bargaining agreement. Although this particular handbook provision favors Swinford, other provisions do not. The employee handbook could be binding only if authorized by the CBA. We acknowledge that the employer granted a leave of absence and failed to follow its own handbook. Nevertheless, we must rule against Swinford to protect the rights of all union workers under CBAs. We refuse to set a precedent that allows employers to disregard CBAs and enter into separate contracts with individual union members. Otherwise, employers could render any hard-won CBA ineffective merely by issuing non-union approved employee handbooks.

■ Under federal law, the employee handbook could be binding only if authorized by the CBA. Swinford should have brought a grievance under the CBA to determine the effectiveness of the handbook. Instead, he ignored his labor union, the CBA, and the grievance procedure. We have no choice but to affirm the judgment.

■ Existing federal labor laws were developed over many hard-fought battles for workers' rights. Those laws apply here. Federal rules of law must be used to interpret CBAs "in order to ensure uniform interpretation" of such agreements and thereby "promote the peaceable, consistent resolution of labor-management disputes." *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404, 108 S. Ct. 1877, 1880, 100 L. Ed. 2d 410 (1988); *Commodore v.*

---

[1]We decline to review the summary judgment ruling and focus our review on the propriety of the directed verdict ruling. *See Cook v. Selland Const., Inc.*, 81 Wn. App. 98, 101, 912 P.2d 1088 (1996) ("Once the case has been tried on its merits, review of a pretrial order denying summary judgment is neither possible nor appropriate.").

*Univ. Mechanical Contractors, Inc.*, 120 Wn.2d 120, 126-27, 839 P.2d 314 (1992).

■ Section 301 of the Labor Management Relations Act (LMRA) of 1947, codified at 29 U.S.C. § 185(a), grants federal courts jurisdiction over claims arising from CBAs. State courts have concurrent jurisdiction.[2] Even in state courts, however, federal law must be applied to such claims:

> if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted [sic] and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

*Lingle*, 486 U.S. at 405-06; *Hill v. J.C. Penney, Inc.*, 70 Wn. App. 225, 230, 852 P.2d 1111, *review denied*, 122 Wn.2d 1023 (1993).

Citing *Hill v. J.C. Penney, Inc.*, 70 Wn. App. 225, Swinford maintains that section 301 of the LMRA does not preempt his breach of contract claim because his claim is based solely on the employment handbook, and is completely independent of the CBA. *Hill*, however, did not decide whether a breach of contract claim is preempted by section 301. In *Hill*, the plaintiff sued J.C. Penney, stating a claim for wrongful termination based on an implied contract to terminate only for cause. She relied on an employee handbook, personnel procedures manual, oral contracts, and an *expired* CBA. The court rejected Hill's attempt to revive her right to be terminated only for cause under the expired CBA but said:

> However, there are state law remedies which do not interfere with the collective bargaining process. Hill can litigate in state court a claim that Penney made a binding promise, or entered into a contract with her individually, or any other claim that does not interfere with the collective bargaining process.

---

[2]*Lingle*, 486 U.S. at 403 n.2; *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S. Ct. 519, 7 L. Ed. 2d 486 (1962).

*Hill*, 70 Wn. App. at 233. Although the court in *Hill* implied that an independent contract claim might not interfere with the collective bargaining process, it did not reach the issue of whether an action for breach of an implied contract was preempted by section 301. Instead, it ruled that Hill failed to prove J.C. Penney modified the "at will" employment by making promises in its handbook or otherwise. *Hill*, 70 Wn. App. at 234. Accordingly, it would be improper to interpret *Hill* as holding that state breach of contract claims are not preempted by section 301 of the LMRA. This is a question of first impression in Washington.

Likewise, we reject Swinford's contention that *Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, permits a state law breach of implied contract claim. In *Commodore*, the Washington Supreme Court discussed section 301 preemption of *tort* claims. The court noted that while states cannot use state law to resolve breach of CBA disputes, a different issue is presented "when a plaintiff brings a claim that does not sound in breach of contract, but nevertheless arguably implicates the CBA." *Commodore*, 120 Wn.2d at 126. In the context of *tort* claims, the *Commodore* court adopted the "Marcus" model,[3] which focuses on whether a state law claim is "independent." A state statutory or common law claim is independent of the CBA—and therefore should not be preempted by section 301—if it can be asserted without reliance on the CBA. *Commodore*, 120 Wn.2d at 129. Under the Marcus model adopted by *Commodore*, as long as the claim does not arise from the CBA, it is deemed independent, even if the employer's defense mandates interpreting the CBA.[4] The *Commodore* ruling comports with federal law regarding section 301 preemption tort claims.

---

[3]*See* Note, *The Need for a New Approach to Federal Preemption of Union Members' State Law Claims*, 99 YALE L.J. 209, 215 (1989).

[4]In this event, state courts will apply federal law, under their concurrent jurisdiction to interpret CBAs, to assess the employer's defense. *Commodore*, 120 Wn.2d at 130-32.

The *Commodore* ruling, however, dealt exclusively with the interface between tort claims and CBAs for the purpose of determining whether a particular tort claim was preempted by section 301. It did not discuss *contract* claims, except to note that under the Marcus model, "[c]ourts would . . . declare section 301 preemption only in the following causes of action: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing . . ., and (3) claims that are clearly based *directly* on violation of the CBA." *Commodore*, 120 Wn.2d at 129. Because Swinford's claim is for breach of contract, *Commodore* does not support Swinford's position.

█ Federal law clearly mandates preemption in this case. The preemptive force of section 301 is so powerful as to displace entirely any state claim either based on a CBA or whose outcome depends on an analysis of the CBA. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987). Ninth circuit cases uniformly hold that section 301 preempts state law breach of contract claims involving *job positions* covered by a CBA. *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1285-86 (9th Cir. 1989).[5] Because any independent agreement of employment concerning a job position covered by a CBA can be effective only as part of the CBA, the CBA controls. *See, e.g., Young*, 830 F.2d at 997; *Bale*, 795 F.2d at 779; *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1474 (9th Cir. 1984).[6] Even claims that are substantially dependent on an analysis of a CBA are preempted by section 301 of the LMRA. *Chmiel*, 873 F.2d at 1285. A few examples are illustrative.

---

[5]*See also Young*, 830 F.2d at 997-98; *Stallcop v. Kaiser Foundation*, 820 F.2d 1044, 1048 (9th Cir. 1987), *cert. denied*, 484 U.S. 986 (1987); *Bale v. General Tel. Co.*, 795 F.2d 775, 779 (9th Cir. 1986); *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1474 (9th Cir. 1984); *Bloom v. Universal City Studios, Inc.*, 734 F. Supp. 1553, 1558 (C.D. Cal. 1990), *aff'd*, 933 F.2d 1013 (9th Cir. 1991).

[6]In contrast, where the claim is based upon an independent employment contract and the claim concerns a job not covered by a CBA, it is not completely preempted. *Chmiel*, 873 F.2d at 1286; *Young*, 830 F.2d at 998; *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S. Ct. 2425, 2430-32, 96 L. Ed. 2d 318 (1987).

In *Chmiel*, 873 F.2d at 1285, the employee claimed that his employer, independently of the CBA, agreed that he would not be terminated except for good cause. The *Chmiel* court held that Chmiel's independent contract claim concerned a job position covered by the CBA and, therefore, was completely preempted by section 301. *Chmiel*, 873 F.2d at 1285-86.

Similarly, in *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d at 1474, the employee alleged that his employer's policy manual, which provided for progressive discipline, constituted a contract that the employer breached. The *Olguin* court said that to the extent that the implied contract was inconsistent with the CBA, the bargaining agreement controlled. Language in the CBA said that it would be "the sole agreement between Inspiration and the Union 'or any of the employees covered by the Agreement.'" The court concluded that the manual could be binding only if authorized or incorporated in the CBA. *Olguin*, 740 F.2d at 1474. Because the claim required interpretation of the CBA, federal law applied.

Although we sympathize with Swinford's predicament, he held a position covered by the CBA. The CBA said it was "the full and complete Agreement on all bargainable issues between the parties hereto and for all for whose benefit this Agreement is made." Yet, the employee handbook purported to grant leaves of absence, a right not provided for in the CBA. To determine whether the employee handbook created enforceable promises, the court would be first required to interpret the foregoing clause in the CBA. Under such circumstances, Swinford's claim is preempted by section 301. An employer cannot circumvent a CBA with an employment handbook and enforce its terms under state contract law, avoiding our uniform federal labor laws.

Swinford was required to proceed under federal law. A suit arising under or requiring the interpretation of a CBA is governed by federal law, which "displace[s] entirely any state cause of action 'for violation of contracts be-

tween an employer and a labor organization' ". *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23, 103 S. Ct. 2841, 2853, 77 L. Ed. 2d. 420 (1983) (citations omitted); *see also Young*, 830 F.2d at 998.

Federal law requires an employee to use grievance and arbitration procedures under the CBA unless the employee can show that he or she was not fairly represented by the union. *See, e.g., Olguin*, 740 F.2d at 1472; *Johnson v. Southwestern Bell Tel. Co.*, 819 F. Supp. 578, 583 (E.D. Tex. 1993), *aff'd*, 22 F.3d 1094 (5th Cir. 1994). Where an employee has a cause of action falling under section 301, dismissal is required when the employee has failed to exhaust grievance and arbitration remedies under the CBA. *Clayton v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 451 U.S. 679, 681, 101 S. Ct. 2088, 2091, 68 L. Ed. 2d 538 (1981); *Jackson v. Southern Cal. Gas Co.*, 881 F.2d 638, 646 (9th Cir. 1989); *Bloom*, 734 F. Supp. at 1561-62. This requirement prevents employers and employees alike from "short-circuiting" an agreed-upon grievance procedure by resorting to the court system. *Clayton v. ITT Gilfillan*, 623 F.2d 563, 568 (9th Cir. 1980), *rev'd in part on other grounds*, 451 U.S. 679 (1981). Moreover, it is consistent with federal policy that "if at all possible, labor disputes should be resolved within the framework of procedures approved under collective bargaining, rather than in the courts." *Clayton*, 623 F.2d at 568.

Here, the CBA provided for grievance and arbitration procedures. Swinford should have brought a grievance to determine the effectiveness of the employee handbook. His union could have assisted if it agreed that he was treated wrongly. Swinford did not allege a justifiable excuse for failure to exhaust his remedies under the CBA and, thus, the trial court was obligated by federal law to dismiss his action.[7] Russ Dunmire was entitled to judgment as a matter of law. No evidence or reasonable infer-

---

[7]*See, e.g., Retana v. Apartment, Motel, Hotel & Elevator Operators Union Local No. 14*, 453 F.2d 1018, 1025 (9th Cir. 1972) (where the complaint seeks to al-

ence therefrom could sustain a verdict in Swinford's favor.[8] Accordingly, we reverse the trial court's denial of Russ Dunmire's motion for directed verdict.[9]

## 2. Directed Verdict on Discrimination Claim

Swinford complains that the trial court erred in dismissing his claim of handicap discrimination, which was based on a failure to accommodate theory.[10] He claims that there were factual questions as to whether he was handicapped, or whether Russ Dunmire perceived him to be so, and, therefore, the claim should have been sent to the jury.

The Washington Law Against Discrimination (WLAD), RCW ch. 49.60, provides that an employer has an affirmative duty to reasonably accommodate a handicapped employee. The employer's failure to do so constitutes unlawful discrimination. RCW 49.60.180; *See, e.g., Calhoun v. Liberty Northwest Ins. Corp.*, 789 F. Supp. 1540 (W.D. Wash. 1992); *Dean v. Municipality of Metro. Seattle-Metro*, 104 Wn.2d 627, 632, 708 P.2d 393 (1985); *Wheeler*, 65 Wn. App. at 560-61. An employee claiming discrimination must first prove a prima facie case of discrimination and, if he or she does so, then the burden shifts to the employer to present evidence suggesting a nondiscriminatory reason

lege a justifiable excuse for failure to exhaust contract remedies, general allegations suffice, and the complaint may not be dismissed unless the court is able to say, beyond a doubt that the allegations are insufficient to excuse the failure to exhaust the grievance provisions of the CBA).

[8]A motion for a directed verdict should be granted only where it can be said, as a matter of law, that no evidence or reasonable inferences existed to sustain a verdict for the party opposing the motion. The evidence must be viewed in the light most favorable to the nonmoving party. *Wheeler v. Catholic Archdiocese of Seattle*, 65 Wn. App. 552, 560, 829 P.2d 196 (1992), *rev'd on other grounds*, 124 Wn.2d 634, 880 P.2d 29 (1994).

[9]Because Swinford's breach of contract claim was preempted by federal law and should have been dismissed by the trial court, we do not reach Swinford's allegations of instructional error, which all related to the breach of contract claim. In light of our ruling, any instructional error was harmless. This same reasoning applies to the trial court's denial of Swinford's motion for a new trial, which was based on instructional error.

[10]Swinford also advanced a claim that Russ Dunmire unlawfully discriminated by discharging him "because of . . . physical disability." *See* RCW 49.60.180(2). The parties referred to this action as a discrimination—unlawful termination claim. This cause of action was submitted to the jury, who decided the claim in favor of Russ Dunmire.

for its failure to accommodate. *Johnson v. Goodyear Tire & Rubber Co.*, 790 F. Supp. 1516 (E.D.Wash. 1992); *Kastanis v. Educ. Employees Credit Union*, 122 Wn.2d 483, 859 P.2d 26 (1993), *modified*, 865 P.2d 507 (1994); *Wheeler*, 65 Wn. App. at 560-61. If the employer sustains its burden, the employee must then demonstrate that the reasons given by the employer are pretext for discrimination. *Johnson*, 790 F. Supp. 1516.

■■ To make a prima facie case of handicap discrimination, Swinford had to prove (1) that he was handicapped, (2) that he had the qualifications required for the position, and (3) that the employer failed to take affirmative measures to make a job opportunity known to him and to determine whether he was qualified for the position. *See Dean*, 104 Wn.2d at 639; *Molloy v. City of Bellevue*, 71 Wn. App. 382, 388, 859 P.2d 613 (1993), *review denied*, 123 Wn.2d 1024 (1994). The third element is referred to as the employer's duty to reasonably accommodate the handicapped employee. *Wheeler*, 65 Wn. App. at 561.

The WLAD statute does not define the term handicap. Case law, however, provides that a "handicap" under the WLAD requires both the presence of a handicapping condition and evidence that the condition was the reason for the discriminatory treatment. *Doe v. Boeing Co.*, 121 Wn.2d 8, 846 P.2d 531 (1993). The court in *Goodman v. Boeing Co.*, 75 Wn. App. 60, 877 P.2d 703 (1994), *aff'd*, 127 Wn.2d 401, 899 P.2d 1265 (1995), held that a condition is a "sensory, mental or physical handicap," for the purposes of a handicap discrimination action, if it is an abnormality and is the reason why the employee did not get or keep the job in question. This definition is derived from WAC 162--22-040.

Whether an employee is handicapped is generally a question for the trier of fact. *See Sherman v. State*, 128 Wn.2d 164, 202, 905 P.2d 355 (1995); *Doe*, 121 Wn.2d at 15; *Phillips v. City of Seattle*, 111 Wn.2d 903, 909, 766 P.2d 1099 (1989). However, to meet the initial prima facie requirement, Swinford had to produce evidence of handi-

cap and evidence that the handicap was the reason for his discharge. *Calhoun*, 789 F. Supp. at 1547; *Simmerman v. U-Haul Co. of Inland Northwest*, 57 Wn. App. 682, 687, 789 P.2d 763 (1990). Swinford introduced no medical evidence of a handicap, and he failed to establish a handicapping condition. On August 27, 1990, Swinford's doctor signed a release indicating that Swinford would be able to return to regular work on September 29, 1990. The doctor placed no qualifications on Swinford's ability to work as a journeyman mechanic. Swinford communicated this information to Lewis at Russ Dunmire in early September.

Swinford also failed to show that a handicapping condition was the reason behind his discharge. Lewis's letter to Swinford said that Swinford's discharge was based on low productivity. Swinford has not demonstrated that this explanation was a pretext. Low productivity appears to be the actual reason he was discharged. We sympathize with Swinford's situation. He was injured, granted a leave of absence and then he was discharged for low productivity. Still, he was not discharged for a handicap. In sum, Swinford failed to establish a prima facie case of handicap discrimination, and a directed verdict was appropriate.

The judgment is affirmed.

MORGAN and BRIDGEWATER, JJ., concur.

Reconsideration denied August 1, 1996.

Review denied at 130 Wn.2d 1024 (1997).