# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

PAUL WILKINSON,

               Appellant,

               v.

AUBURN REGIONAL MEDICAL CENTER
(ARMC), UNIVERSAL HEALTH
SERVICES (UHS), DR. DANIEL CLERC,
TRACY RADCLIFF, MELISSA
POLANSKY,

               Respondents.

No. 70819-8-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: September 15, 2014

APPELWICK, J. — Paul Wilkinson appeals the dismissal of his complaint alleging that his former employer discriminated against him based on gender, retaliated against him for union activity, and violated implied contract terms of his employment independent of the union contract. We affirm.

## FACTS

In 2005, Tracy Radcliff, a manager at Auburn Regional Medical Center's Sleep Disorder Center (ARMC), hired Paul Wilkinson as a sleep technician. Throughout Wilkinson's employment, the terms and conditions of the sleep technician position were set by a series of collective bargaining agreements between ARMC and the United Food and Commercial Workers Local 21. Melissa Polansky, the departmental lead who was also a member of the union, completed evaluations of Wilkinson's job performance in 2006, 2007, and 2008. Radcliff completed Wilkinson's performance evaluation in 2009 and placed him on a performance improvement plan to address his complaining, his resistance to Polansky's leadership and disciplinary counseling, and his excessive

absenteeism. After receiving complaints from doctors about his performance and imposing a series of disciplinary actions, Radcliff terminated Wilkinson's employment in October 2010.

In 2012, ARMC and the union arbitrated the grievance Wilkinson filed challenging his termination. The arbitrator found that the period of time between Wilkinson's final warning and his termination was too short to give him the opportunity change his behavior to avoid termination, particularly when he had responded to previous warnings with only "debate and discussion." The arbitrator ordered reinstatement on a "last chance" basis. Wilkinson returned to work briefly in June 2012. After Wilkinson committed certain performance errors and arrived late for a mandatory meeting, Radcliff again terminated his employment.

In September 2012, Wilkinson filed a pro se complaint against ARMC, its parent company, Dr. Daniel Clerc, Radcliff, and Polansky, seeking $1 million in damages, as well as back pay, front pay, lost benefits, interest, costs, and punitive damages in the amount of one percent of the annual revenue of ARMC's parent company. In his complaint, Wilkinson alleges that after his successful challenge to a disciplinary action in April 2009, Polansky and Radcliff "labeled" him as "'aggressive and insubordinate'" "simply because of his sex." He claims Radcliff and Polansky then disciplined him with "little or no foundation" and gave him negative reviews "without supporting factual evidence," while other employees "committed the same or similar offenses and were never disciplined." He also claims Radcliff terminated him without allowing him to "defend himself" or

2

"improve or change his behavior," thereby, "[m]aking it clear that the decision to terminate" was predetermined. He claims Polansky gave him the "silent treatment," prevented him from performing his job "as proscribed by policy and lab standards," and yelled at him.

The complaint states that Polansky and Radcliff "have treated the Plaintiff and other males in their department to a different standard than female employees in the same positions." The complaint also alleges violations by management of the collective bargaining agreement with the union and Wilkinson's "employment contract." Without reference to any particular cause of action or statute, the complaint states the defendants "did engage in discrimination, harassment, and retaliation against" him during his employment, "which resulted in his wrongful termination from ARMC on October 21, 2010."

In May 2013, ARMC filed a motion to dismiss under CR 12, or in the alternative for summary judgment under CR 56. In July, the trial court granted the motion in part by (1) ordering Wilkinson to serve a summons on certain defendants within 45 days; (2) dismissing with prejudice claims based on his requests for his personnel file and payroll records; (3) dismissing with prejudice claims challenging individual written disciplinary notices issued prior to his initial termination; (4) dismissing with prejudice claims related to his 2010 grievance, the 2012 arbitration, and the arbitrator's decision; (5) dismissing with prejudice claims against the nonparty new owner of ARMC; (6) dismissing without prejudice all claims relating to his 2012 termination and his subsequent grievance; and (7) reserving ruling on remaining claims of gender discrimination,

3

harassment, or retaliation under the Washington Law against Discrimination (WLAD), chapter 49.60 RCW, and Title VII of the Civil Rights Act of 1964 (Title VII).

After additional briefing and argument, the court dismissed with prejudice Wilkinson's claims of gender discrimination and retaliation under the WLAD and Title VII, as well as all claims of violations of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169, in an order entered on August 9, 2013.

Wilkinson appeals.

## DISCUSSION

We review de novo both a summary judgment order and the propriety of a trial court's dismissal of an action under CR 12(b)(6). Lam v. Global Med. Sys., Inc., 127 Wn. App. 657, 661 n.4, 111 P.3d 1258 (2005); Dave Robbins Constr., LLC v. First Am. Title Co., 158 Wn. App. 895, 899, 249 P.3d 625 (2010). In reviewing a summary judgment order, we view the facts and reasonable inferences in the light most favorable to the nonmoving party. Lam, 127 Wn. App. at 661 n.4. We may affirm an order granting summary judgment if there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. CR 56(c). If materials "outside the pleadings are presented to and not excluded by the court," a CR 12(b)(6) motion is treated as a summary judgment motion under CR 56. CR 12(b)(6).

Wilkinson challenges the August 9 order, claiming the trial court erred in granting summary judgment on his WLAD and NRLA claims and failed to enter judgment on his implied contract claim.

4

I.   WLAD

The WLAD prohibits an employer from discriminating on the basis of sex. RCW 49.60.180. A plaintiff suffers sex discrimination when he or she is treated less favorably than other similarly situated employees because of his or her gender. Shannon v. Pay 'N Save Corp., 104 Wn.2d 722, 726, 709 P.2d 799 (1985), abrogated on other grounds by Blair v. Wash. State Univ., 108 Wn.2d 558, 740 P.2d 1379 (1987). In a discrimination case in which there is no direct evidence or admission of discrimination, a plaintiff can proceed only by showing facts sufficient to create an inference of discrimination. Hill v. BCTI Income Fund–I, 144 Wn.2d 172, 179-80, 23 P.3d 440 (2001), overruled on other grounds by McClarty v Totem Elec., 157 Wn.2d 214, 137 P.3d 844 (2006).

To create the inference of discrimination required for a prima facie case, a plaintiff must show that he or she belongs to a protected class and was treated less favorably in the terms or conditions of employment than a similarly situated, nonprotected employee who does substantially the same work as the plaintiff. Washington v. Boeing Co., 105 Wn. App. 1, 13, 19 P.3d 1041 (2000). In discrimination cases, the plaintiff must establish specific and material facts to support each element of a prima facie case. Marquis v. City of Spokane, 130 Wn.2d 97, 105, 922 P.2d 43 (1996). Mere opinions and unsupported, conclusory allegations will not defeat summary judgment. Chen v. State, 86 Wn. App. 183, 190, 937 P.2d 612 (1997); Absher Constr. Co. v. Kent Sch. Dist. No. 415, 77 Wn. App. 137, 141-42, 890 P.2d 1071 (1995).

If an employer responds to a prima facie case by articulating a legitimate, nondiscriminatory reason for its actions, the employee resisting summary judgment must produce evidence raising a genuine issue of material fact as to whether the employer's reason is unworthy of belief or is mere pretext for what is in fact a discriminatory purpose. Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 364, 753 P.2d 517 (1988). "'Speculation and belief are insufficient to create a fact issue as to pretext. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that he has been discriminated against.'" Hines v. Todd Pac. Shipyards Corp., 127 Wn. App. 356, 372, 112 P.3d 522 (2005) (quoting McKey v. Occidental Chem. Corp., 956 F. Supp. 1313, 1319 (S.D.Tex.1997).

In moving for summary judgment, ARMC presented admissible evidence to demonstrate that Radcliff disciplined and ultimately terminated Wilkinson based on his job performance, insubordination, and attendance issues. ARMC offered records of written disciplinary actions against Wilkinson and Radcliff's affidavit detailing her decision to hire Wilkinson in 2005, her disciplinary actions against him, and her decision to terminate his employment in 2010 and 2012. In addition, ARMC presented evidence to rebut Wilkinson's allegations that female employees were not subject to discipline. In particular, ARMC offered disciplinary records indicating that two female sleep technicians, C.O.[1] and B.R., received written discipline for lab policy and procedure violations and attendance

---

[1] It is not clear from the record below that the two employees consented to the disclosure of information from their personnel files therefore we are redacting their identities.

issues during Wilkinson's employment, and that Radcliff terminated B.R.'s employment in August 2009 for her violation of the attendance policy.

Wilkinson fails to identify any admissible evidence in the record to create an inference that he was treated differently than female sleep technicians. According to Wilkinson, four female technicians, including C.O. and B.R., failed to follow lab policies and procedures and missed mandatory meetings without receiving discipline. But, to establish these facts, he relies on documents he created, such as journal entries, notes and letters to management, and lab notes, all of which are based largely on speculation, hearsay, and his own unsupported, self-serving conclusions and beliefs about what other people did or did not do, often outside his presence.

Similarly, Wilkinson fails to identify any admissible evidence to support his claim that ARMC's stated reasons for his discipline and termination are unworthy of belief or mere pretext to disguise a discriminatory purpose. Despite acknowledging that Radcliff both hired and fired him, Wilkinson offers no sensible response to the resulting "strong inference that he . . . was not fired due to any attribute" of which Radcliff was aware at the time she hired him. Griffith v. Schnitzer Steel Indus., Inc., 128 Wn. App. 438, 453, 115 P.3d 1065 (2005).

Throughout his lengthy briefing, Wilkinson presents extended, passionate discussion and argument to demonstrate his proper work performance and attack the credibility and judgment of any person offering a differing or critical review. Again, Wilkinson relies primarily on unsworn documents of his own creation offering his personal interpretation of lab policies and procedures and his own

7

subjective justifications for his choices in performing his job duties. But, an employee's disagreement with a supervisor's assessment of job performance does not demonstrate pretext or "give rise to a reasonable inference of discrimination." Parsons v. St. Joseph's Hosp. & Health Care Ctr., 70 Wn. App. 804, 810-11, 856 P.2d 702 (1993).

In sum, because Wilkinson fails to identify any evidence to raise an inference of sex discrimination or to create a material issue of fact regarding the reason for his discipline and discharge, the trial court properly dismissed his WLAD sex discrimination claim.

To the extent Wilkinson intended to assert a claim of a hostile work environment based on sex discrimination or harassment, any such claim fails for the same reason. The employee's gender must be the motivating factor in the employer's treatment in order for a hostile work environment to exist. See Coville v. Cobarc Servs., Inc., 73 Wn. App. 433, 438-39, 869 P.2d 1103 (1994). Because Wilkinson fails to identify any evidence beyond speculation and conclusory allegation to suggest that his sex was the motivating factor in Radcliff's or Polansky's actions, summary judgment was proper.

II. Title VII

Although Wilkinson states for the first time in his reply brief that dismissal of his Title VII claim "is also being appealed," he fails to cite to the record or present any authority or argument to demonstrate error in the trial court's dismissal of the claim. Given these failures, we need not address this assignment of error. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801,

809, 828 P.2d 549 (1992) (declining to address arguments raised for the first time in a reply and assignments of error unsupported by citation to the record, argument, or authority). Moreover, Wilkinson offers no reason to distinguish any possible Title VII claim from his WLAD claims, which fail for a lack of evidentiary support.[2]

## III. Retaliation

Although Wilkinson did not clearly articulate the basis for any retaliation claim in his complaint, he argues on appeal that ARMC violated the NLRA by retaliating against him for reporting violations of the contract to the union and for fighting every disciplinary action after April 2009. The record indicates that Wilkinson filed a charge with the National Labor Relations Board (NLRB) in March 2011 claiming that ARMC disciplined and discharged him in retaliation for "his Union and/orprotected [sic] concerted activity." In a letter dated June 23, 2011, the NLRB regional director dismissed the charge and advised Wilkinson of his right to appeal the dismissal to the Acting General Counsel of the NLRB. Apparently, Wilkinson did not file such an appeal.

Citing San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244-45, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959), ARMC argues that the NLRB has exclusive jurisdiction over controversies even arguably involving unfair labor practices under the NLRA. The Garmon doctrine preempts claims based on a state law that attempts to regulate conduct that is arguably either prohibited or protected by the NLRA. Hume v. Am. Disposal Co., 124 Wn.2d 656, 662, 880

---

[2] Given this resolution we deny ARMC's motion to strike.

P.2d 988 (1994). Although exceptions exist and Washington courts are generally prejudiced against preemption, because Wilkinson specifically identifies his retaliation claim as a violation of the NLRB, and because he has failed to articulate any challenge to federal preemption either below or on appeal, the trial court did not err in dismissing his retaliation claim. Hume, 124 Wn.2d at 664; Kilb v. First Student Transp., LLC, 157 Wn. App. 280, 293, 236 P.3d 968 (2010).

IV.   Implied Contract

Finally, Wilkinson claims that the trial court failed to enter judgment on his implied contract theory. But, in its August 9 oral ruling, the trial court indicated that Wilkinson presented no evidence to establish the existence of a contract between ARMC and Wilkinson independent of the union contract. And, Wilkinson acknowledged on the record that the trial court was granting summary judgment to ARMC on all claims or causes of action "within the contours of the original complaint."

Nevertheless, in his briefing before this court, Wilkinson argues that because the collective bargaining agreement does not specify policies and procedures for job performance, investigation of complaints regarding performance, and disciplinary decisions an implied contract must exist "between the employer and employee for those things not covered" by the agreement. Wilkinson fails to identify any authority or provide coherent argument to support his claim.

Moreover, this claim is preempted by section 301 of the Labor Management Relations Act (LMRA), which preempts state law breach of contract

claims involving job positions covered by a collective bargaining agreement. Swinford v. Russ Dunmire Oldsmobile, Inc., 82 Wn. App. 401, 411, 918 P.2d 186 (1996). To the extent Wilkinson believed ARMC had communicated some kind of enforceable promise to him regarding his employment outside the terms of the collective bargaining agreement, his remedy was to follow the grievance and arbitration procedures in the union contract. Id. at 412. Because he failed to do so and because federal law "prevents both employers and employees alike from 'short-circuiting' an agreed-upon grievance procedure by resorting to the court system," ARMC was entitled to dismissal of Wilkinson's implied contract claim as a matter of law. Id.

Affirmed.

WE CONCUR: