# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DREW OTA, CRAIG GARDNER, ROBERT DESMOND, ROBERT BRINK, and ALEC WILLIAMS, | No. 47812-9-II |
| Appellants, | |
| and | |
| LUIS FIGEROA, DAVID BERWICK, KEITH VOLK, CAMERON ASHLEY, BRIAN SAECHAE, MATTHEW WHITEHEAD, LISA SHANAHAN, JASON HALEY, JARVIS HARRIS, FE'DFETAI MAREKO, and ELIZABETH EARP, | UNPUBLISHED OPINION |
| Plaintiffs. | |
| v. | |
| PIERCE COUNTY, a political subdivision of the State of Washington, | |
| Respondent. | |

MELNICK, J. — Drew Ota, Craig Gardner, Robert Desmond, Robert Brink, and Alec Williams appeal from the trial court's order granting summary judgment dismissal of their action seeking recovery of wages for their work as correctional officers (COs). Because the COs failed to exhaust their grievance remedies under the collective bargaining agreement (CBA), we affirm the trial court's summary judgment in favor of Pierce County (County).

FACTS

I.    WAGE CLAIMS

Ota, Gardner, Desmond, Brink, and Williams worked as COs at the Pierce County jail. A CBA set their wages. In the fall of 2006, the COs' union and the County agreed to a new CBA to cover January 1, 2007 to December 31, 2009. It changed the pay range classification for COs and provided that in 2008,

> the pay range for the classification of Correctional Officer shall be adjusted as follows: Step 1 shall be dropped and the existing Steps 2 through 6 shall be moved down one step each, to Steps 1 through 5. A new Step 6 will be added which is approximately 2.5% higher than the existing top step. Employees shall each be moved to the corresponding new step number so that their pay rate will not be impacted by this change and step increase counters will continue. However, employees who have been at the top step of the range for a minimum of 26 accruable pay cycles will be advanced to the new Step 6.

Clerk's Papers (CP) at 313. The new CBA relabeled the old steps but did not reduce the pay rate. On January 2008, new employees started at a higher salary than their predecessors because they started at the old Step 2 salary rather than the old Step 1 salary. Employees on the six step range were still eligible to receive periodic step increases on the completion of 26 accruable pay cycles. The COs received the next pay step increase at the same time they would have if there had been no change to the range.

II.    PROCEDURAL FACTS

The COs each filed a claim for damages for lost wages with the County's Risk Management and Insurance Department. The claims alleged that the County "improperly reset the pay grade clock . . . resulting in pay that was less than the rate outlined in the 2008 contract." CP at 18, 21, 24, 27, 30. After an investigation, the County denied the claims.

The COs filed a complaint against the County in superior court seeking to recover unpaid wages. The complaint alleged that paychecks received by the COs were wrongly calculated and were issued for less pay than agreed to in the CBA.

The County filed its answer and asserted defenses including that the COs failed to exhaust their administrative remedies under the CBA, the statute of limitations barred the claim, the COs failed to state a claim upon which relief may be granted, any recovery is barred by reason of laches, and that the County's actions complied with the terms of the CBA.

On December 23, 2014, the County filed a motion for summary judgment with supporting declarations. In part, the County argued the COs did not exhaust either the contract grievance procedures or the administrative remedies provided for under chapter 41.56 RCW.[1]

Deborah Young, the County Employee Relations Manager responsible for labor negotiations and contract administration, stated that, the CO's "step increase counters did not change. The only change was the label of the pay rate. Therefore, they received their next pay step increase at the same time they would have if there had been no bargained change to the pay range at all." CP at 180.

Joe Carrillo, the County Human Resources Deputy Director, described the new pay scale. "All the current Step 1 employees, and all new hires would be moved into the old Step 2 salary . . . , whether or not they had reached their first 26 pay cycle milestone. . . . [T]he salary would be at the old Step 2 salary." CP at 185. Under the new CBA, "each of the other step designations were rolled back a step. Those employees who had already reached Step 2 were re-designated as Step 1 employees, those in Step 3 were re-designated as Step 2." CP at 185. Finally, none of the

---

[1] Public Employees' Collective Bargaining.

grievances filed was ever taken to binding arbitration, nor was a complaint ever filed with the Public Employment Relations Commission.

On January 12, 2015, the COs filed a response to the County's motion for summary judgment. Among other issues, they argued that the case was not subject to the grievance process set out in the CBA. They claimed that they substantially complied with the grievance process. Ota filed a declaration and explained that he filed grievances, but they were denied by the COs' representation.

The County filed a reply and attached a new declaration by Young which stated that Ota received every step increase and every cost of living adjustment to which he was entitled under the CBA.

On May 8, the trial court heard arguments on the motion for summary judgment. The trial court granted the motion. The trial court signed an order granting the motion because an employee must exhaust the grievance and arbitration procedures if the dispute arises under a CBA. Finally, the trial court stated that the law requires an employee to assert a claim against the union if the union declined to pursue a grievance on the employee's behalf.

The COs appeal.

ANALYSIS

The COs argue that the trial court erred by granting the County summary judgment because the dispute was not a grievance as defined by the CBA. We disagree.

I.    STANDARD OF REVIEW

We review an order for summary judgment de novo, engaging in the same inquiry as the trial court. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We construe all facts and their reasonable inferences in the light most favorable to the nonmoving party. *Jones*, 146 Wn.2d at 300.

A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton*, 115 Wn.2d at 516. If the moving party satisfies its burden, the nonmoving party must present evidence demonstrating that a material fact remains in dispute. *Atherton*, 115 Wn.2d at 516. If the nonmoving party fails to demonstrate that a material fact remains in dispute, and reasonable persons could reach but one conclusion from all the evidence, then summary judgment is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

II.    LEGAL PRINCIPLES

"Section 301 of the Labor Management Relations Act (LMRA) of 1947, codified at 29 U.S.C. § 185(a), grants federal courts jurisdiction over claims arising from CBAs," but state courts have concurrent jurisdiction. *Swinford v. Russ Dunmire Oldsmobile, Inc.*, 82 Wn. App. 401, 408, 918 P.2d 186 (1996). "Even in state courts, however, federal law must be applied to such claims." *Swinford*, 82 Wn. App. at 408. Federal labor policy requires the exhaustion of grievance procedures before resorting to the court system. *Lew v. Seattle Sch. Dist. No. 1*, 47 Wn. App. 575, 577, 736 P.2d 690 (1987). "In general, where a collective bargaining agreement establishes grievance and arbitration procedures for the redress of employee grievances, an employee must exhaust those procedures before resorting to judicial remedies." *Lew*, 47 Wn. App. at 577.

5

However, "where a grievance procedure has not been exhausted due to the union's refusal to press the matter on to arbitration," the courts have generally held that "'a prerequisite to maintaining a lawsuit against [the employer] is an allegation that the union acted arbitrarily, discriminatorily, or in bad faith in failing to exhaust the contractual procedures for settling disputes.'" *Lew*, 47 Wn. App. at 578 (quoting *Ploof v. Village of Enosburg Falls*, 514 A.2d 1039, 1043 (Vt. 1986)). This prerequisite arises because the union is the agent of the employee, and "in the absence of evidence showing bad faith, discrimination, or arbitrary conduct on the part of the union, its decision to forgo exhaustion of grievance procedures binds the employee and forecloses judicial action on the contract." *Lew*, 47 Wn. App. at 578. The proper use of the grievance and arbitration procedures prevents employees from "short-circuiting" the established procedure for the court system. *Swinford*, 82 Wn. App. at 412.

In construing a CBA, we apply the following rules: "(1) the intent of the parties controls, (2) we ascertain that intent from reading the contract as a whole, and (3) we do not read ambiguity into the contract." *Davis v. Dep't of Transp.*, 138 Wn. App. 811, 818, 159 P.3d 427 (2007). We give words and provisions in a contract their ordinary meaning. *Davis*, 138 Wn. App. at 818. If the meaning of words or provisions are uncertain or if they are capable of more than one meaning, we consider them to be ambiguous. *Davis*, 138 Wn. App. at 818. Words and provisions in a contract are not ambiguous simply because a party suggests an opposing meaning. *Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wn. App. 416, 421, 909 P.2d 1323 (1995). We should also avoid interpreting a contract in a manner that would lead to absurd results. *Forest Mktg. Enters., Inc. v. Dep't of Nat. Res.*, 125 Wn. App. 126, 132, 104 P.3d 40 (2005).

III.    THE TRIAL COURT DID NOT ERR BY GRANTING SUMMARY JUDGMENT

The COs argue that the trial court erred by granting the County summary judgment because they did not have to exhaust their remedies under the CBA becuase the circumstances of the case do not fit the definition of a grievance in the CBA.  They argue that the County's refusal to pay wages due to them cannot "affect the wages due under the [CBA]"; therefore, their case does not fall within the CBA's definition of grievance.  Br. of Appellant at 10 (emphasis omitted).  We disagree.

Under the 2007-09 CBA, a "grievance" is defined as "a management interpretation or application of the provisions of this agreement which adversely affects an employee's wages, hours or conditions of employment and is contrary to the terms of this Agreement."  CP at 330.  The grievance and arbitration procedures provided for in the CBA were "the sole and exclusive method of adjusting all complaints or disputes arising from this Agreement which the Union or employee may have and which relate to or concern the employee and the Employer."  CP at 332.

The CBA established five steps to be followed when an employee files a grievance.  In Step 1, the grievance had to be filed with the employee's lieutenant within ten working days of the occurrence which gave rise to the grievance.  The lieutenant would then meet with the employee within five working days and ten days after the meeting, the lieutenant would provide a written decision.  In Step 2, if the grievance was not settled, it would then be presented to the bureau chief or designee within ten working days after the receipt of the decision from Step 1.  The corrections administrator or designee would meet with the employee within ten working days.  Ten days after the meeting, the written decision would be completed.  If the grievance was not settled at Step 2, Step 3 required the grievance be presented to the sheriff or designee within ten working days of receipt of the decision and had to set forth the specific provision of the CBA alleged to be violated,

the reason for dissatisfaction, and the proposed remedy. Then, within ten working days of receiving the grievance, the sheriff or designee would then meet with the employee, and issue a decision within ten working days thereafter. If the grievance was still not resolved, then under Step 4, it would then be presented to the county executive or labor relations designee within ten working days of the prior decision. The county executive or labor relations designee would then meet with the employee within ten working days and issue a decision within ten working days after the meeting. If the grievance remained unresolved after Step 4, an arbitration request could then be submitted by the union designee. However, only signatories to the CBA may advance the grievance to arbitration.

First, it is clear that this case involves a grievance because the alleged wage withholding by the County involved management's application of the CBA's terms as they related to wages. Furthermore, the COs alleged that this application of the CBA adversely affected their wages because they claimed to have received less than they should have. We conclude that this case falls within the CBA's definition of a grievance.

Next, we conclude that the COs failed to exhaust the CBA's grievance remedies. In their response to the County's motion for summary judgment, the COs argued that they substantially complied with the grievance process. Ota's declaration stated that he tried to file formal grievances and that he sent the grievance to Carrillo, who denied the grievance as untimely. He also stated that he asked the union representatives and, later in 2010, the independent guild that replaced the union to push the grievance further, but they refused. Yet Ota did not follow the grievance procedure outlined in the CBA. Ota's 2008 grievance progressed to Step 3, but he failed to push the grievance to Step 4 because he did not present the grievance to the County Executive or Labor

Relations designee within ten working days of the prior decision. Ota could have moved through the grievance procedure, but he did not.

Therefore, because the COs' claim is a grievance under the CBA, and because the COs did not exhaust the grievance remedies under the CBA, the trial court did not err by granting summary judgment to the County.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Maxa, A.C.J.